2009 Ark. App. 231

**James BRYANT, Jr., Appellant,**

v.

**Sherrie BRYANT, Appellee.**

**No. CA 08–188.**

Court of Appeals of Arkansas.

April 1, 2009.

Danny R. Williams, North Little Rock, for appellant.

No response.

DAVID M. GLOVER, Judge.

This is a one-brief case. Appellant, Lieutenant Colonel James Bryant, and appellee, Captain Sherrie Bryant, were divorced by decree entered on October 17, 2007. They have a son, Donovan, who was born on June 7, 2007. Appellant appeals from the decree, contending that the trial court committed reversible error when it 1) conditioned his visitation with Donovan upon his being supervised by appellee for the first three visits, 2) refused to make or enforce a visitation schedule for the first five years of Donovan's life, and 3) denied his request to be the alternative physical custodian for Donovan in the event appellee was deployed or incapacitated. We affirm.

### Standard of Review

When the setting of visitation is at issue, we will not reverse the trial court absent an abuse of discretion. *Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008). Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Id.*

*Supervised Visitation*

For his first point of appeal, appellant contends that the trial court committed reversible error when it conditioned his visitation with Donovan upon his being "supervised" by appellee for the first three visits and going to appellee's home for visitation for a period of one year. This issue has been rendered moot by the passage of time between the entry of the decree and our consideration of this appeal. Moreover, the decree did not contemplate visitation at appellee's house for a period of one year as appellant contends.

The pertinent portion of the parties' divorce decree provides:

4. That Plaintiff shall have reasonable visitation rights with the parties' minor child until he reaches the age of 5. *Plaintiff shall exercise his first three visits with the parties' minor child in the presence of the Defendant at a location agreed to by the parties. After the first three visits, the Plaintiff shall have reasonable visitation with the parties' minor child without the Defendant's presence.* The Plaintiff may visit the parties' minor child at his daycare center. The visitation shall be arranged between the parties until the child reaches the age of 5. Plaintiff shall pick up the parties' minor child at the beginning of visitation and mother shall pick up the parties' minor child at the conclusion of the visitation. *The exchange for visitation shall occur at the Defendant's residence until the child reaches the age of 1; thereafter, the parties shall exchange the child at a neutral location agreed upon between the parties.*

(Emphasis added.) According to the decree, the first three visits were to be in appellee's presence at an agreed upon location, but after that time, the visits themselves were to take place out of her presence—only the exchange of the child for visitation was to take place |₃at appellee's house. Further, after the child reached the age of one year, even the exchange was to take place at a neutral location agreed upon by the parties.

Donovan's first birthday was on June 7, 2008. It is now early 2009, and he is approximately twenty months old. The provisions in the decree that appellant challenges in this first point of appeal are likely no longer effective. The first three visits should be completed and the subsequent one-year period in which the trial court ordered the exchange for visitation to take place at appellee's house has long since passed. The issue is therefore moot.

As our supreme court explained in *Terry v. White*, 374 Ark. 387, 391–93, 288 S.W.3d 199, 202–03 (2008):

As a general rule, the appellate courts of this state will not review issues that are moot. *See Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). To do so would be to render advisory opinions, which this court will not do. *See id.* We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *See id.* In other words, a moot case presents no justiciable issue for determination by the court. *See Shipp v. Franklin*, 370 Ark. 262, 258 S.W.3d 744 (2007).

. . . .

That being said, we have recognized two exceptions to the mootness doctrine, one of which involves issues that are capable of repetition, yet evade review. *See Honeycutt v. Foster*, 371 Ark. 545, 268 S.W.3d 875 (2007). The other mootness exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *See id.* This ex-

ception arose early in our case law and continues today. *See Cotten, supra.* We, therefore, must examine the instant appeal and determine whether it falls within either exception. It does not.

Here, any resolution of this first issue by our court would have no practical legal effect because the provisions complained of are no longer pertinent due to the passage of time. Neither do the above two exceptions to the mootness doctrine apply under the circumstances of this case. We take this opportunity to observe, however, that even a child of twenty months, who is experiencing his first visits with a noncustodial parent, needs the security of the custodial parent's, or another familiar adult's, temporary presence in order to adjust.

### Visitation Schedule

For his second point of appeal, appellant contends that the trial court committed reversible error when it refused to make or enforce a visitation schedule for the first five years of the minor child's life. We find no abuse of the trial court's discretion.

Appellant's basic contention under this point is that the trial court erred in refusing to set a definitive written visitation schedule. The divorce decree provides that appellant "shall have reasonable visitation rights with the parties' minor child until he reaches the age of 5.... The visitation shall be arranged between the parties until the child reaches the age of 5." Appellant argues that the parties are demonstrably acrimonious and that, without a definitive written visitation schedule, he will be left to appellee's whims regarding visitation, "with no recourse to enforce his rights." We do not find his argument convincing.

The setting of visitation is within the sound discretion of the trial judge.

*Delacey v. Delacey,* 85 Ark.App. 419, 155 S.W.3d 701 (2004). The reasons for placing visitation matters within the trial court's discretion are clear. No two situations are ever exactly the same, and a trial court must be afforded the flexibility to deal with the myriad of circumstances confronting families in determining appropriate visitation. Unless an appellant demonstrates an abuse of the trial court's discretion in this regard, we will not reverse.

Appellant testified that he had received threats from appellee's family members and that they were hostile toward him, but he did not describe a history of hostility with appellee. The specific concern that appellee expressed about appellant's visitation involved Donovan's post-natal medical condition and her desire that appellant be properly instructed in Donovan's care before exercising visitation. She acknowledged that Donovan attended daycare and that it only took her twenty minutes to instruct the daycare providers about Donovan's needs. Consequently, to the extent that Donovan's medical condition still exists, appellant can be quickly instructed regarding Donovan's needs, and appellee should not be able to use his lack of instruction as a barrier to appellant's visitation. In short, appellant merely anticipates trouble between himself and appellee in arranging for visitation with Donovan. Contrary to his contention that he will be left with no recourse, that is not true. In the event that appellee does not allow him to have reasonable visitation with Donovan, appellant will always have legal recourse to pursue his visitation rights.

### Alternative Physical Custodian

For his final point of appeal, appellant contends that the trial court "committed reversible error when it denied appellant's request to be alternative

physical custodian for Donovan in the event appellee is deployed or incapacitated when there was no evidence before the trial court as to appellant's disqualification as a father." In making this argument, appellant relies upon a comment that the trial court made from the bench, denying "at this point" appellant's request to have custody of Donovan if appellee were to be deployed. The trial court reasoned that appellant "has to show me that he is more interested in the child." When this comment was made by the trial court at the final hearing, it does not appear that appellant had had much, if any, contact with his son. More importantly, during the same hearing, the trial court subsequently stated, "If [appellant] wants to make that request later about being the designated custodian when [appellee] is deployed, he can come back and do that, but I would have to hear something different." Clearly, the trial court's "ruling" was to *defer* action on appellant's request until appellee is actually notified of her deployment, when and if that event ever occurs. The failure to obtain a ruling on the issue presented to us on appeal is a procedural bar to our consideration of the issue. *See Nameloc v. Jack, Lyon & Jones*, 362 Ark. 175, 208 S.W.3d 129 (2005). Without a ruling by the trial court on this issue, there is nothing for us to review, and, therefore, we do not address the issue.

Affirmed.

ROBBINS, MARSHALL, HENRY and BROWN, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

I dissent for two reasons. First, I cannot subscribe to the majority's new "for the most part" mootness doctrine. It is rather like allowing a person to be buried when he is "for the most part" dead. The majority tacitly acknowledges that it is on shaky ground by attempting to make findings of fact, notwithstanding that these facts are not supported by the evidence. Let me say simply that it is bad practice for this court to look outside the record to resolve an issue and never permissible for this court to engage in rank speculation. I simply will not be a part of it.

Second, and much more importantly, it is a clear abuse of discretion for the trial judge to refuse to give Lieutenant Colonel Bryant a fixed visitation schedule. "Reasonable visitation" in this instance, and indeed any instance where there is acrimony between the parties, means that visitation will likely only take place at the whim of the custodial parent and could very well mean no visitation. I believe that the majority is being incredibly obtuse when it rejects Lt. Col. Bryant's contention that there was hostility between the parties because "he did not describe a history of hostility with the appellee." How can they be blind to the fact that the act of filing the appeal that we now consider is evidence of acrimony between the parties? Just the assertion by one party of a problem with such an arrangement should compel the trial court—and this court on appeal—to set out a specific visitation schedule and not blithely state that the parties need to learn to get along. *See Bailey v. Bailey*, 97 Ark.App. 96, 244 S.W.3d 712 (2006). I would hold that in only ordering "reasonable visitation" the trial judge in essence failed to exercise discretion. It is settled law that when a trial judge fails to exercise discretion, a case must be remanded for her to do so. *Gullahorn v. Gullahorn*, 99 Ark.App. 397, 260 S.W.3d 744 (2007).

I find little solace, and even less sound legal reasoning, in the majority excusing itself from making a decision by stating

that Lt. Col. Bryant "will always have legal recourse to pursue his visitation rights." Is that not what he has already attempted? How is it appropriate to tell a litigant that his recourse is to go back to the trial court and ask for the relief that it did not grant him in the first place? The majority has obviously ignored the significant time and expense involved for the litigants, the waste of judicial resources, and the fact that our case law requires that Lt. Col. Bryant would have to prove that there is a material change of circumstances before it would even be permissible for it to entertain a motion to change visitation. *See Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007).

There is no small amount of irony in the fact that the rank of Lieutenant Colonel in the United States Army qualifies an individual to be a battalion commander, which means that the leaders of this country could entrust him with lives of more than a thousand of other people's sons and daughters in the most harrowing situations imaginable. Yet, where it comes to Lt. Col. Bryant's own child, the trial judge in this case afforded him less trust than it affords the day care center where Ms. Bryant deposits the child during working hours. In almost every court in almost every county of this state, almost every non-custodial parent gets the "standard visitation schedule." Given the record before us, I cannot imagine why the trial court—and the majority—has chosen to treat this obviously honorable and accomplished man the same way we treat wife beaters and child molesters. Perhaps we need to be reminded that child custody and "visitation" is for the benefit of the child. In my view, neither the trial court nor the majority has established how this order is in the minor child's best interest.