MIKE MURPHY, Judge
Jim Nash, a licensed attorney appearing pro se, appeals from a jury's defense verdict on his claims for breach of contract, specific performance, and tortious interference with a business expectancy. Appellant argues six points for reversal, but his primary contention is that there was no compliance with Arkansas Rule of Civil Procedure 25 following the death of the original defendant.[1] We affirm.
Appellant performed legal services for his brother, John R. Nash, Sr., for many years. These services included representation in administrative and regulatory matters and in the sale of a convenience store and a warehouse, as well as attempts to sell a liquor store owned by John R. Nash, Sr. According to appellant, he had an oral agreement with his brother to provide legal services on an as-needed basis and a "pay when you can" basis. After John R. Nash, Sr., died in April 2012, his widow, Norma Nash, informed appellant that his services were no longer required. A small estate proceeding was opened for John R. Nash, Sr., and appellant filed a claim against his estate for unpaid legal work.
Appellant subsequently sued Norma in April 2015 both individually and as trustee of the Norma Nash Living Trust (the trust). Appellant alleged in his complaint a breach-of-contract claim that Norma was transferring almost all her assets, including the liquor store, to the trust as a fraudulent transfer to defeat any claims against her husband's estate. The complaint also asserted claims for specific performance and tortious interference with a business expectancy. A discovery dispute arose, and appellant filed a motion to compel and a request for sanctions. However, Norma died on February 28, 2016.
A notice of suggestion of death was filed on March 22, 2016. Appellant filed a motion asking the circuit court to appoint both John R. Nash, Jr., (Nash Jr.) and Pam Glover as special administrators to represent Norma's estate and her trust.[2] The trust responded to the motion, asserting that no probate proceedings had been opened and that no one had been appointed to succeed Norma. On May 18, 2016, the circuit court entered an order holding appellant's motions to compel and for sanctions in abeyance and directing appellant to file a substituted complaint to "include the proper parties to substitute for Defendant Norma Nash, now deceased, and any other proper parties to this action[.]"[3] The *175 order also stated that the amended complaint to be filed would satisfy the requirements of Rule 25 and other statutory requirements for revivor and substitution of parties.
Appellant filed an amended complaint on May 27. The complaint named as defendants Nash Jr. and Glover, individually and as cotrustees of the trust and as coadministrators of Norma's estate. Norma was still listed in the complaint both individually and as trustee. The complaint incorporated the allegations contained in the original complaint and asserted four causes of action-breach of contract, imposition of a constructive trust, and two counts alleging interference with a contract and business expectancy.[4]
On June 24, Nash Jr. and Glover answered the amended complaint. They denied that any personal representatives or special administrators had been appointed for Norma's estate. On July 26, the circuit court entered an order prepared by the attorney for Nash Jr. and Glover dismissing appellant's claims against Norma in her individual capacity because no substitution had been entered within ninety days of the suggestion of death as required by Arkansas Code Annotated section 28-50-102 (Repl. 2012).
On August 2, appellant filed a motion to vacate the dismissal order. He alleged that the dismissal was made without a dismissal motion having been filed. He also recited that no probate proceedings had been initiated for Norma's estate.[5]
Appellant filed an amended and supplemental complaint on September 9. Nash Jr. and Glover answered individually and as cotrustees of Norma's trust. However, they specifically denied that a special administrator had been appointed for Norma's estate.
On February 27, 2017, appellant filed another amended complaint keeping the same parties named as in the first amended complaint and adding Lyle and Perry as defendants "for Norma Nash, deceased."
A two-day jury trial was held on June 7 and 8, 2017. The jury returned verdicts in favor of "Defendants, Norma Nash and her substitutes and heirs" on the issues of breach of contract, unjust enrichment, and interference with business expectancy.
Before entry of the judgment in favor of the defendants, appellant filed a motion for new trial. The judgment was entered on June 22. Appellant filed his notice of appeal on July 21. When the circuit court did not rule on appellant's motion for new trial within thirty days, he timely filed an amended notice of appeal to include the deemed denial of his motion.
Because appellant's first three points are premised on whether there has been proper substitution of parties following Norma's death, we discuss them together. Appellant's three points are premised on the contention that the circuit court somehow disregarded the provisions of Arkansas Rule of Civil Procedure 25 and allowed the appellees to improperly delay the opening of probate proceedings for Norma *176 in an effort to thwart the substitution of a proper defendant following Norma's death.
Although not stated as such, we believe that appellant's arguments raise the following issues: (1) which party bears the burden of properly reviving the action following the death of a party; (2) whether the lack of proper substitution renders the jury's verdict as to appellant's claims against Norma individually a nullity; (3) who is the proper party to substitute following Norma's death; and (4) whether the circuit court properly dismissed the claims against Norma individually.
"The substitution of a new party to proceed with the prosecution or defense of a claim is the revivor of an action. The death of a party to a legal proceeding, where the cause of action survives, suspends the action as to decedent until someone is substituted for decedent as a party." Deaver v. Faucon Props., Inc. , 367 Ark. 288, 291, 239 S.W.3d 525, 529 (2006) (quoting 1 C.J.S. Abatement and Revival § 155 ). An action cannot be revived unless the cause of action survives. Id. At common law, most actions grounded in contract survived the death of either party, but those in tort did not. See McDonald v. Pettus , 337 Ark. 265, 988 S.W.2d 9 (1999) ; Wilson v. Young , 58 Ark. 593, 25 S.W. 870 (1894) ; Ward v. Blackwood , 41 Ark. 295 (1883). Thus, appellant's individual contract claims against Norma survived her death, subject to the claims' proper revival.
The burden having the action properly revived is on the plaintiff or other party seeking relief from the court. Speer v. Speer , 298 Ark. 294, 766 S.W.2d 927 (1989) ; McDonald v. Petty , 254 Ark. 705, 496 S.W.2d 365 (1973) ; Wooley v. Planter's Cotton Oil Mill, Inc. , 91 Ark. App. 213, 209 S.W.3d 409 (2005). It was appellant's cause of action against Norma; therefore, it was up to him to substitute new defendants in place of Norma if he wanted to continue his action. This brings us to the question of the proper defendant to substitute for Norma.
Arkansas Rule of Civil Procedure 25(a)(1), (2) governs the procedure for obtaining an order of revivor. It provides in pertinent part as follows:
(a) Death. (1) If a party dies and the claim is not thereby extinguished, the Court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party, and such substitution may be ordered without notice or upon such notice as the Court may require. Unless the motion for substitution is made not later than ninety (90) days after the death is suggested upon the record by the service upon the parties of a statement of the fact of death, the action may be dismissed as to the deceased party.
(2) Upon the death of a plaintiff the proper party for substitution shall be his personal representative or, where the claim has passed to his heirs or to his devisees, the heirs or devisees may be substituted for the deceased party. Upon the death of a defendant in an action wherein the claim survives against his personal representative, the the personal representative shall be the proper party for substitution. Except in an action for the recovery of real property only, or for the adjudication of an interest therein, the heirs, devisees or personal representative may be the proper parties for substitution as the Court may determine. Where the deceased party is acting in the capacity as personal representative, his successor shall be the proper party for substitution.
(Emphasis added.)
*177 Rule 25 is clear that in this situation, the personal representative is the proper party to substitute as the defendant for appellant's claims against Norma individually. Under Rule 25, the substitution of a defendant's heirs is appropriate only in actions involving real property, which this case does not. When a plaintiff dies, his or her cause of action passes to the heirs. But unlike the situation in which a plaintiff dies, there is no basis for substituting a deceased defendant's heirs as the proper defendants. If a defendant's heirs are substituted, they would become personally liable for the deceased's action in tort or contract. However, a defendant's liability does not pass to his or her heirs, it passes to his or her estate. Purcelly v. Carter , 45 Ark. 299 (1885).
In his amended complaint filed after the hearing on his motion for revivor, appellant asserted that Norma's will named both Nash Jr. and Glover to act as coadministrators of her estate but that no order appointing a special administrator, an administrator, or a personal representative had been entered by any court. Appellant alleged that Nash Jr. and Glover, individually and as cotrustees and coadministrators of Norma's estate, were the proper defendants and should be appointed and substituted.
Appellant complains that Nash Jr. and Glover waited until after the judgment had been entered in this case before opening probate for Norma's estate. However, appellant could have petitioned to have a special administrator appointed for Norma's estate under various provisions of the probate code. See Nickles v. Wood , 221 Ark. 630, 255 S.W.2d 433 (1953) (pursuant to what is now Ark. Code Ann. § 28-48-103 or pursuant to Ark. Code Ann. § 28-40-107 ). Although appellant appeared to ask that Nash Jr. and Glover be appointed, he chose not to follow through and relied on them to probate their mother's estate. But Norma's personal representative and heirs had no duty to seek appointment. As a result, no order appointing a special administrator or a personal representative was entered before trial.
Likening this situation to that in Koonce v. Mitchell , 341 Ark. 716, 19 S.W.3d 603 (2000), appellant argues that because there was no proper substitution for Norma, the circuit court lacked subject-matter jurisdiction such that the jury's verdict on the contract claim against Norma is a nullity. Appellant's reliance on Koonce is misplaced because that case did not involve the substitution of parties; rather it was a quiet-title action in which the record owner of real property was not made a party or given notice of the proceedings. Instead, issues of proper substitution of parties are generally matters of personal jurisdiction, not subject-matter jurisdiction. See Berryhill v. Synatzske , 2014 Ark. 169, 432 S.W.3d 637 ; Taylor v. MCSA, LLC , 2013 Ark. 430, 430 S.W.3d 113 ; Crenshaw v. Special Adm'r of Estate of Ayers , 2011 Ark. 222, 2011 WL 1896766. The Taylor court concluded that the requirement of substitution is subject to waiver.
We believe that the substitution issue has been waived. Taylor, supra. Appellant continued to seek relief from the court by amending his complaint and proceeding to trial on the complaint as amended. See Speer, supra. In Speer , the parties were divorced by a decree entered in 1985, from which the husband appealed. We affirmed on direct appeal and modified and remanded a child-support issue on cross-appeal. The wife died while that appeal was in process, and her interest was pursued by her father as special administrator. After remand, husband again appealed the circuit court's decision on property rights. Husband argued on appeal that *178 because there was no motion for revivor, all subsequent proceedings after the first appeal were void. After pointing out that the child-support issue was not properly before this court in the first appeal due to the wife's death, the supreme court rejected the revivor argument, stating,
Here, there can be no doubt but that any objection to a failure of revivor had been waived by [husband]. Following the appeal, there were not one but two further hearings concerning matters after remand. Both hearings were made at the request of [husband], and in both instances, it was [husband] seeking relief from the court. It was not until nineteen months after [wife's] death, on the very morning of the second hearing, that [husband] first raised the issue of abatement by filing a motion to that effect. The trial court dismissed the motion.
Speer , 298 Ark. at 300, 766 S.W.2d at 931. Appellant has waived the question of revivor by continuing to amend his complaint and going to trial without a proper party substituted for Norma in her individual capacity.
In his final challenge to the jury's verdict based on substitution, appellant argues that the circuit court erred in dismissing his claims against Norma individually for lack of substitution. However, we need not decide this issue because any error that may have occurred in the dismissal was rendered harmless because those claims were ultimately tried to a jury and a defense verdict returned. There is no explanation of how this happened when the claims had been earlier dismissed. Both sides acknowledge in their briefs that the contract claim was tried to the jury.
Appellant's fourth point argues that the errors asserted in his first three points, when combined with appellees' request for attorney's fees, amounts to an error of law, an abuse of discretion, and a violation of due process. We need not consider this point because the circuit court has not yet ruled on the motion for attorney's fees.
For his fifth point, appellant argues that the court erred in denying him any reasonable discovery. The issue is not preserved for our review because the circuit court never ruled on appellant's second motion to compel and for sanctions. Instead, the court held them in abeyance until the proper parties were substituted. The court also indicated that if appellant was dissatisfied with the discovery, he should bring the discovery issue back to the court's attention for resolution. There is nothing in the record showing that appellant did so. However, it was appellant's burden to obtain a ruling on the issue. When an appellant fails to obtain a ruling below, we do not consider that point on appeal. See Bryant v. Bryant , 2009 Ark. App. 231, at 6, 303 S.W.3d 91, 95. Without a ruling by the circuit court on this issue, there is nothing for us to review; therefore, we do not address the issue. Johnson v. State , 303 Ark. 313, 316, 796 S.W.2d 342, 345 (1990).
Finally, appellant argues that the circuit court erred in not granting his motion for new trial. Under this heading, appellant raises four subpoints: (1) error in the substitution of parties following Norma's death; (2) an irregularity in the proceedings preventing appellant from having a fair trial; (3) trying appellant's contract claim against Norma without a proper substitute and in failing to instruct the jury on the Arkansas Fraudulent Transfers Act, Ark. Code Ann §§ 4-59-201 to -215 (Repl. 2011 & Supp. 2017), amended by Uniform Voidable Transactions Act of 2017, No. 1087, 2017 Ark. Acts 5958; and (4) the verdict was against the preponderance of the evidence. We find no error.
*179 Appellant's first subpoint relies on and incorporates the arguments he made above in his points about substitution. These need not be repeated here.
In his second subpoint, appellant argues that the behavior of Nash Jr. during his testimony upset the decorum of the court and impacted the jury's verdict. Under Arkansas Rule of Civil Procedure 59(a)(1) and (2), a new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of the court or abuse of discretion by which the party was prevented from having a fair trial and (2) misconduct of the jury or prevailing party.
We have held that a contemporaneous objection is required when a new trial is sought on the basis of an irregularity or misconduct under Rule 59(a)(1) and (2). Thomas John Kennedy of Ark., DDS, PC v. Ausbrooks , 2016 Ark. App. 62, 482 S.W.3d 335.
Here, appellant failed to object on the basis of Nash Jr.'s alleged theatrics and raised the issue for the first time in his motion for new trial. Appellant objected during Nash Jr.'s testimony solely on the basis that opposing counsel was leading the witness and testifying. Later, appellant was questioning Nash Jr. when the witness gave a somewhat long, narrative answer, and appellant asked the court to control the witness, stating "Will the judge control the witness? He can't just go on like that. I'd like to have direct answers to my questions. Do you think you can do that?" Nash Jr. replied, "Did I not answer you?" The court responded, "Let's keep it down. Just ask him a question."
We cannot say that appellant's request was specific enough to alert the circuit court to the problem. It does not specifically call Nash Jr.'s behavior the perceived problem. The request could just as easily be interpreted as asking the court to direct the witness to be more responsive and answer appellant's questions. Moreover, appellant did not ask for an instruction to the jury, a mistrial, or any other relief.
In his third subpoint, appellant contends that he is entitled to a new trial on the basis that the circuit court erred in refusing appellant's proposed jury instruction based on the Arkansas Fraudulent Transfers Act.
Appellant sought to have the jury instructed based on AMI 2426 Implied Covenant of Good Faith and Fair Dealing. The proffered instruction provided:
In addition to the express terms of a contract, the law implies a promise between the parties that they will act in good faith and deal fairly with one another in performing and enforcing their obligations under the contract. Stated another way, the law implies a promise between the parties that they will not do anything to prevent, hinder, or delay the performance of the contract. However, the implied promise does not obligate either party to take any action that is contrary to the express terms of the contract.
You may consider the following alleged acts , hindrances , and delays of Norma Nash only as evidence of a breach of the contract:
1) The alleged mismanagement of the store in Little Rock as to empty shelves and storage space, disorganized and unpredictable closing times and other such conduct discouraging the sale of said store by Plaintiff;
2) The alleged violation of the Arkansas Fraudulent Conveyance Act as *180 to Plaintiff in order to insulate property and funds from Plaintiff's claim by transferring ownership of the property into the Norma F. Nash Living Trust. In determining whether there was a violation of said Act, you may consider\ that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. In determining actual intent, consideration may be given, among other factors, as to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(I0) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
The circuit court gave the first paragraph of the proffered instruction, which did not involve the Arkansas Fraudulent Transfers Act, but declined to give the second longer paragraph, calling it a comment on the evidence. This court will not reverse a circuit court's decision to give or reject an instruction unless the court abused its discretion. Cantrell v. Toyota Motor Corp. , 2018 Ark. App. 335, 553 S.W.3d 157.
Appellant argues that although the circuit court had dismissed the claims against Norma, the case proceeded to trial as a breach-of-contract case instead of an interference-with-contract case and that the court erred in not instructing the jury on the Arkansas Fraudulent Transfers Act. We hold that the circuit court reached the correct result in refusing the second paragraph of appellant's proposed instruction because there was no evidence to support the alleged acts listed in that instruction. A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. Garrison v. Hodge , 2018 Ark. App. 556, 565 S.W.3d 107. There were only three mentions of the trust in the abstract. There was no evidence whatsoever concerning the eleven indicators of a fraudulent transfer of property into the trust. A circuit court can properly refuse to give a jury instruction unsupported by the evidence. Holliman v. MFA Mut. Ins. Co. , 289 Ark. 276, 711 S.W.2d 159 (1986) ; Woodruff Elec. Co-op. Corp. v. Daniel , 251 Ark. 468, 472 S.W.2d 919 (1971).
*181 Appellant argues in his last subpoint that the verdict on his breach-of-contract claim was against the preponderance of the evidence. Under Ark. R. Civ. P. 59, an appellant may be granted a new trial if "the verdict ... is clearly contrary to the preponderance of the evidence or is contrary to the law." Ark. R. Civ. P. 59(a)(6). Here, appellant's argument is that the defense that he was paid in cash was not credible. He recognizes that the question is whether the jury's verdict was supported by substantial evidence.
Our supreme court has noted that generally, a defense verdict will always be supported by substantial evidence because the plaintiff has the burden of proof, and the jury is the sole judge of credibility of witnesses and the weight and value of the evidence. Webb v. Bouton , 350 Ark. 254, 262, 85 S.W.3d 885, 889-90 (2002). Appellant cites opposing counsel's stipulation that appellant had performed the work. However, as both appellant and opposing counsel acknowledged, the real issue was whether appellant had been paid for that work and how much he was owed. Moreover, appellant never testified as to the number of hours he spent on the various matters or an appropriate hourly rate from which the jury could calculate the amount due; instead, appellant testified that he was seeking recovery in quantum meruit.[6] He did testify that he was owed a fee of $ 36,000 to be paid from the proceeds from the sale of a warehouse that had not been paid. Appellant testified that most payments were made by check. On cross-examination, he acknowledged that there were times when John Nash, Sr., would give him $ 200-$ 300 in cash but denied that this would have totaled over $ 2,000 over a twenty-three-year period. There was also an exhibit of an $ 18,000 check written by Norma to appellant as payment of appellant's fee from the sale of a convenience store. Nash Jr. testified that appellant had been paid in cash. The jury clearly could have credited Nash Jr.'s testimony that appellant had been paid.
Because appellant's argument is clearly a challenge to the jury's credibility determination, we defer to that determination and hold that the jury's verdict was not against the preponderance of the evidence.
Affirmed.
Gladwin and Brown, JJ., agree.

Appellant filed a motion to certify the case to the supreme court. However, the court denied the motion on April 12, 2018. Appellant had earlier filed a petition for writ of certiorari and writ mandamus with the supreme court in case number CV-17-54. That petition was denied by the supreme court on March 2, 2017.

Nash Jr. and Glover are two of the children of Norma and John Nash, Sr. Susan Nash Lyle and Perry Nash (Perry) are the other two children.

Appellant filed two sets of motions to compel discovery. The first, filed on December 9, 2015, was granted by the circuit court in orders entered on December 14, 2015. The second set of motions was filed on January 13, 2016, and sought to enforce the court's orders from the first set of motions to compel discovery. It is this second set of motions that is at issue in this appeal.

One of the interference-with-a-contract and business-expectancy counts was against Gaylen McClanahan, the former manager of the liquor store. Although McClanahan was named as a defendant in each of the complaints, he was dismissed from the action on a directed verdict before the case was submitted to the jury.

The circuit court never entered a ruling on appellant's motion to set aside the dismissal.

In his "First Amendment to the Amendment and Supplement to the Complaint and Amended Complaint," appellant sought $ 255,000.