HARRISON v. TERRY DAIRY PRODUCTS, INC.

5-800 and 5-838 (consolidated)                    287 S. W. 2d 473

Opinion delivered February 13, 1956.

[Rehearing denied March 19, 1956.]

*John K. Shamburger* and *Richard L. Pratt,* for appellant.

*Owens, McHaney, Lofton & McHaney,* for appellee.

LEE SEAMSTER, Chief Justice.  This appeal by the appellants is from a temporary order of the Pulaski Chancery Court, first division, in restraining the appel-

lants from picketing the property of appellee. The appellants also seek, by writ of certiorari, to have this Court quash the Chancery Court order which found the appellants guilty of contempt and assessed punishment. The trial court found the appellants guilty of violating the terms of a temporary restraining order in which the appellants were restrained from committing acts of violence against the property and personnel of appellee; from intimidating the employees of appellee and from interfering with the orderly business of appellee.

On March 30, 1955, the appellant, a local of the International Teamsters Union, called a strike of employees of Terry Dairy Products Company, Inc., appellee herein. On March 31, 1955, appellee filed a verified petition in equity seeking an injunction against illegal picketing and other illegal conduct. The verified petition alleged (a) threats of physical harm to appellee's employees at the picket line and elsewhere; (b) use of force and threats of force to prevent appellee's employees from entering the plant premises; (c) use of "goon squads" to follow appellee's employees, who, by threats, intimidation, and physical violence endeavored to cause the employees to discontinue working for appellee; (d) the malicious damaging of property of Terry employees; (e) assault and battery on Terry employees; and, (f) mass picketing to disrupt appellee's business and to prevent ready access to and from the plant. No response was filed by the appellants.

Upon the verified petition the court, on April 2, 1955, entered a temporary order enjoining threats and acts of intimidation and violence against appellee's property, officers, agents, employees, or others doing business with appellee, and further interfering with the activities of employees of appellee. Pickets were limited in number to two, and the union, its members and agents, were enjoined from congregating in the general vicinity of appellee's plant.

On April 25, 1955, the appellee petitioned the court for an order adjudging the appellant union in contempt.

Although no response denying the verified petition was filed by appellants, the court heard evidence in support of the petition on April 28 and April 29 of 1955. The court found the appellant union in contempt of court and assessed a fine of $500 against the union. The court also found one of the union members, Dewey Burchfield, in contempt of court and assessed a $100 fine and a ten day jail sentence against Burchfield. The jail sentence was suspended pending good behavior. The court did not suspend the fines. Without setting out the evidence introduced, we find it was sufficient to justify the court's order. There was no appeal by either party from the court's order.

Thereafter, on July 14, 1955, the appellee filed a verified petition for order to show cause, alleging the following acts of violence:

"On the 14th day of July, 1955, at approximately two o'clock A. M., a heavy charge of dynamite was planted in the milk bottling room of plaintiff's (appellee's) plant and detonated, resulting in complete destruction of one bottling machine and extensive damage to other machinery and equipment in said room and to the building. On the same morning, a heavy charge of dynamite was placed in each of the boilers at plaintiff's plant. At approximately five o'clock A. M., when one of said boilers was turned on the dynamite planted therein was caused to explode, completely demolishing said boiler and seriously damaging other machinery and equipment in the boiler room and the building itself. The second boiler was not placed in operation, but was forthwith examined. Twenty-one sticks of dynamite, together with the necessary fuses and detonators to explode same were found inside said boiler, and said charge would have resulted in an explosion had the boiler been ignited. One of plaintiff's employees was injured by the aforesaid explosions and might easily have been killed."

"That on or about the 14th day of July, 1955, at an hour unknown to the plaintiff, some person or persons whose names are unknown to the plaintiff placed syrup

or other foreign substances in the gasoline tanks and motors of the trucks operated by the plaintiff to the end that said foreign substances caused material damage to the motors of said trucks when they were started, and wholly prevented their operation in the prosecution of plaintiff's business.''

On July 15, 1955, the court revoked the appellants' authority to maintain any pickets, and directed that the fines previously levied, but unpaid, be paid forthwith, and that Burchfield be committed to jail. The court refused to take further testimony and the appellant thereupon filed its formal motion to vacate. The court overruled appellant's motion to vacate and provided that the order of arrest and commitment of Dewey Burchfield should be stayed pending appeal and that the $500 fine against the union and the $100 fine against Dewey Burchfield should be held by the clerk of the Chancery Court pending final determination of the issues in this cause. This appeal follows. The appellants also seek, by writ of certiorari, to have this court quash the Chancery Court order which found the appellants guilty of contempt and assessed punishment. The cases were consolidated for briefing and hearing.

Initially, the appellants contend that the chancellor, having failed to enjoin all picketing at the hearings on April 2 and April 28 and 29, had no power or authority thereafter to enter such injunction. This contention is based on two premises: (1) the court, having made one order with reference to picketing, could not thereafter modify or change its order; and (2) there being no appeal from the first order, such order became final and unalterable, unless there be proof of a change of conditions.

The appellants further contend that the trial court erred in revoking the suspension of fines and jail sentence of Dewey Burchfield and the Union. This contention is based on three premises: (1) there is no proof or allegation of any misconduct on the part of Dewey Burchfield or the Union; (2) the court's prior orders

were a complete adjudication of the status and legal rights; and, (3) the court's order was not authorized by law, i. e. the fines and the jail sentence.

The granting or refusing of injunctive relief rests within the judicial discretion of the trial court, and its action in the matter will be sustained on review, if that power has not been abused. This rule applies to the grant or denial of a temporary injunction, and to rulings on motion to dissolve the injunction. In the case of *Riggs* v. *Hill,* 201 Ark. 206, 144 S. W. 2d 26, this court said, "the granting or dissolution of a temporary restraining order is within the discretion of the trial court. He can, at any time, make such orders as appear necessary to protect the interest of the parties, and his action will not be disturbed by this court unless it appears that the Chancellor abused his discretion."

Appellant seeks to attribute to a temporary order the final qualities of a decree or judgment for purposes of applying the doctrine of res adjudicata. An order pendente lite is always subject to the jurisdiction of the court until entry of a final decree. It may be rescinded or modified at the discretion of the court to meet the ends of justice. Its purpose is not to finally dispose of the litigation, but merely to serve the ends of justice until a final hearing can be held. The original order of April 2 specifically provides that it was made subject to the further order of the court. We do not think the Chancellor abused his discretion in this case.

Appellant earnestly contends that the order of the trial court of July 15, 1955, which revoked the suspended jail sentence (previously ordered by the court on April 29, 1955) and directed the sheriff to forthwith take into custody Dewey Burchfield and to commit him to jail for a period of ten days, was invalid. We think the trial court had no authority to revoke the suspended sentence at this later date.

In the case of *Stewart, et al.* v. *State,* 221 Ark. 496, 254 S. W. 2d 55, which was a case similar to the instant

case, this court held, ''We think it best to state explicitly that in these circumstances the suspension of the sentence is in effect its complete remission. In ordinary criminal cases a suspended sentence is a useful deterrent to later wrongdoing. The same considerations do not apply in cases of contempt, and we are aware of no authority for an indefinite suspension in a case of this kind.'' So in the instant case, we think that the suspension of Dewey Burchfield's jail sentence was in effect its complete remission. No additional proof was introduced or pleadings filed to show that Burchfield had later violated the order of the court. Therefore, the court erred in revoking the suspended jail sentence.

The fines assessed were not suspended and the order issued July 15, 1955, to collect the fines already assessed against the appellants, was a proper order and is therefore approved.

The writ of certiorari will be denied, except as to the jail sentence of ten days assessed against Dewey Burchfield. The petition will be granted and the order sending him to jail will be quashed. With the modification mentioned the case is affirmed.