McDANIEL *v.* TOLBERT.

5-1421                                        309 S. W. 2d 326

Opinion delivered January 20, 1958.

[Rehearing denied February 24, 1958]

*James E. McDaniel* and *William B. Howard,* for appellant.

*Douglas Bradley,* for appellee.

PAUL WARD, Associate Justice. H. D. McDaniel and D. H. McDaniel, d/b/a McDaniel Construction Company, a partnership, are engaged in the general contracting business with their principal office located at Jonesboro. They may hereafter be referred to as the Company. On July 6, 1957, and for some weeks prior thereto, they were engaged in the construction of a building to be

used and occupied by the Colson Corporation on lands at the municipal airport in Jonesboro. Prior thereto the Company had erected a building near by for the Frolic Footwear Company. On these jobs the Company had, at times, used both union and non-union labor.

On the date above mentioned the Company's union employees—members of Carpenters and Jointers Union Local No. 1440 and International Hod Carriers Union Local No. 1328—went on strike and established a picket line adjacent to the Company's place of operation. Soon thereafter, on July 11th, the Company filed a complaint in the Chancery Court against the above named unions, asking that a temporary restraining order be issued against the picketing.

In the complaint it was alleged that the members of the unions were congregating on and obstructing a road leading to the construction job for the express purpose of hindering the plaintiff in proceeding with its work, and that the picket was for the purpose of impelling the plaintiff to hire only union labor in violation of Amendment No. 34 to the Constitution of Arkansas. In other words, the complaint alleges that the picketing was being conducted in an unlawful manner and for an unlawful purpose. It was further stated that the illegal acts of the defendants will produce irreparable injury for which there is no adequate remedy at law. The prayer was that "the court should issue this temporary restraining order and that upon the hearing granted, it should be made permanent."

No temporary order was immediately issued by the court. A few days later, before appellees had filed an answer or other pleading except a motion relating to plaintiffs' bond, the Chancellor heard testimony on behalf of the plaintiff. At the conclusion of this testimony appellees entered an oral demurrer. Thereupon the court found and ordered as follows:

1. Defendant, Carpenters and Jointers Local Union No. 1440 admit that they are picketing plaintiff's construction job known as the Colson Plant in or near Jonesboro, Arkansas.

2. That defendant, Carpenters and Jointers Local Union No. 1440 have agreed (though not confessing guilt) in open court that their pickets should not block the ingress and egress of traffic on the public or private roadway by lingering or walking slowly across either said roadway.

3. That defendant's demurrer to the evidence should be sustained with the exception of an injunction against blocking the ingress and egress of traffic on the public or private roadway.

IT IS THEREFORE ordered and decreed that the plaintiff's prayer for *temporary* injunction against all picketing should be and is hereby denied, but defendants are enjoined *temporarily* to the extent that the pickets will not block the ingress and egress of traffic on the public and/or private roadway by lingering or walking slowly across either or in any other manner. *The court retains jurisdiction for such other orders as to it may seem proper pending final hearing.* (emphasis supplied).

Appellants, appealing from that portion of the Chancellor's order which denied a temporary injunction against all picketing, take the positions that the testimony "establishes a *prima facie* showing for a temporary restraining order," and that "the Chancellor was under a mandatory duty to overrule the demurrer to the evidence."

The burden of appellants' argument is centered around the assumption that the rule in *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225, applies here. The rule relied on (as it applies here) was stated by this court, in the cited case, in these words; ". . . it is the trial court's *duty*, in passing upon . . . a demurrer to the evidence . . . to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make out a *prima facie case*." (Emphasis supplied).

It is our conclusion, however, that the rule above mentioned does not apply in this particular situation. As acknowledged by appellants, the holding in the *Werbe* case was based upon Act 470 of 1949 (Ark. Stats. § 27-1729). This statute, after providing that the defendant may file a motion challenging the sufficiency of the evidence (as appellees did here) contains this language: "Thereupon, the Chancellor shall consider and determine such motion: and if such motion be sustained, he shall thereupon *dismiss* the cause of action." (emphasis supplied).

It is undisputed, in the case under consideration, that the Chancellor did not *dismiss* appellants' cause of action. On the other hand it affirmatively appears, from the excerpt of the order copied above, that the "Court retains (retained) jurisdiction for such other orders as to it may seem proper *pending* a *final* order." (emphasis supplied). Consequently we hold that neither Ark. Stats. § 27-1729 nor the said rule based thereon is applicable here where the court entered only a temporary order and where, consequently, appellants' complaint was not dismissed.

In view of the above conclusion, the only remaining question is: Did the trial court abuse its discretion in refusing to grant the temporary injunction? See: *Riggs* v. *Hill,* 201 Ark. 206, 144 S. W. 2d 26, *Jones* v. *Bartlett,* 209 Ark. 681, 191 S. W. 2d 967, and; *Harrison* v. *Terry Dairy Products, Inc.,* 225 Ark. 953, 287 S. W. 2d 473. The rule announced by these and other cases is well stated in 28 Am. Jur. page 500, § 328.

Since appellants make no effort to show that the Chancellor abused his discretion in refusing to grant the temporary relief asked for, we deem it unnecessary to recount in detail all the testimony introduced by the appellants. Suffice to say appellants were not in all instances paying union wages, and the picket signs were to the effect that the strike was because of sub-standard wages and working conditions. It is the contention of appellants, however, that the above reasons assigned by the unions were mere subterfuges, and that in fact they

were picketing for a closed shop, and that this court should pierce the sham and examine the real reason.

A careful examination of the testimony offered by appellants to show that the unions were picketing for an unlawful purpose, i. e. for a closed union shop, does not convince us that the Chancellor abused his discretion in refusing to grant the temporary injunction. Their main reliance is upon the testimony of one of the appellants, H. D. McDaniel. This testimony was to the following effect: He made a deal with the same unions for a closed shop on the Frolic Footwear job, with the exception of three men, and they requested the same deal on the Colson job. He told them he could not go along with those terms, and some days later the strike was called and the picket line was established. The inference which appellants draw from the above is, obviously, that the unions were picketing for a closed shop and not for higher wages or better working conditions. But since appellants had to rely on an inference and in the absence of more positive testimony to support the allegations of their complaint, we do not feel justified in holding that the Chancellor abused his discretion in refusing to issue the temporary injunction.

Affirmed.