James Vincent VALETUTTI *v.*
Kathleen Susan VALETUTTI

CA 05-976                                           234 S.W.3d 338

Court of Appeals of Arkansas
Opinion delivered April 19, 2006

[Rehearing denied October 4, 2006.*]

*Tim A. Womack, P.A.*, by: *Tim A. Womack*, for appellant.

*Harrell & Lindsey & Carr, P.A.*, by: *Christina S. Carr*, for appellee.

ROBERT J. GLADWIN, Judge. Appellant James Vincent Valetutti appeals from the Ouachita County Circuit Court's order filed on June 2, 2005, in which it reduced his monthly alimony obligation to his ex-wife, appellee Kathleen Susan Valetutti. On appeal to this court, appellant argues that the trial court abused its discretion in ordering that alimony continue indefinitely at the reduced but still substantial rate despite proof that appellee no longer needs the alimony. We affirm.

Appellant and appellee were married in 1988, and their only child, a daughter, was born in 1991. Appellee has twin sons from a previous marriage who were minors at the time of the parties' divorce, and appellant has a grown son. In 1997, appellant ac-

---

* BIRD and CRABTREE, JJ., would grant rehearing; see dissenting opinion on denial of rehearing.

cepted a job that paid $98,000 per year, and so the parties moved from Maryland to Camden, Arkansas. Soon after they arrived in Arkansas, appellant had an affair with a coworker, and appellee sought a divorce, which was granted on August 4, 1998. Appellee was awarded custody of the parties' daughter, and they returned to Maryland with the court's permission. In the divorce decree, appellant was ordered to pay $1500 per month in alimony and $200 per week in child support. The decree specifically provided that "alimony shall continue until the death of the payee, payor, the remarriage of the payee, other statutory limitations or further orders of this court." In an opinion delivered on October 13, 1999, we affirmed the trial court's award of alimony and child support and its division of the parties' property. *Valetutti v. Valetutti*, CA99-21, slip op. at 1 (Ark. App. Oct. 13, 1999).

On December 9, 2004, appellant filed a petition for termination or modification of alimony. At the hearing on appellant's petition, appellee testified that she purchased her home in Elkton, Maryland, in January 2005 for $118,000 and that her monthly mortgage payment is $1300. She testified that her daughter and her twenty-year-old son currently live with her. She stated that David Miller is her boyfriend of two years but not her fiancé. According to appellee, she has no plans to marry Miller and further explained that "for now I am done with marriage." She testified that she is employed at ATK Alliant Techsystems, formerly Thiokol Corporation and Cordant Technologies. From 1999 to 2002, she was an administrative assistant/production secretary. She stated that her income for 1999, when she had her two sons as dependents, was $15,813; in 2000, still claiming her two sons as dependents, she earned $18,491; she earned $23,894 in 2001; and in 2002, she earned $25,230. Between 2003 and 2004, she became an accountant for the company after taking night classes at Cecil County Community College. Appellee stated that her company reimbursed her for the cost of the classes. In 2003, appellee earned $27,344, and in 2004, she made $34,290. She stated that her contributions to her 401K plan between 1999 and 2004 totaled approximately $10,000. In 2003, she borrowed approximately $12,000 to pay for home improvements and to pay off some of her credit-card debt. She identified appellant's exhibit listing eleven credit cards, but she stated that she no longer had or used seven of the cards. Appellee testified that, according to her affidavit of financial means, she had $32,000 in a 401K account, $2000 in an IRA account, $800 in a checking account, and $400 in a savings account. Also according to her affidavit of financial means, appel-

lee's expenses totaled $3989 per month. Appellee stated that before her twin boys turned eighteen years old, their biological father paid her $90 per week in child support plus a lump sum of $2000 to pay the arrearage. Appellee stated that, without appellant's alimony payments, she would be unable to pay all of her expenses listed on the affidavit. She stated that her lifestyle had not changed since the parties' divorce and that she was not living more extravagantly or spending more money. Appellee conceded that she currently has two fewer dependents and that her income has doubled since 1998.

Appellant testified that he lives in an apartment in Camden, Arkansas, and that, while he would like to live in a house, he is not currently "emotionally equipped" for that kind of acquisition. He stated that he is the director of contracts for Aerojet General Corporation. He stated that in December 2002 he married Jan Valetutti but had since divorced. Jan paid $80,000 as a down payment on the house they bought for $198,000. He stated that his monthly mortgage payment was $1100, which he paid for two and one-half years, but that he received none of the equity when it was sold following the divorce from Jan. Appellant owed $19,000 on a motorcycle he bought in 2003 and had paid $2200 for its enclosed trailer. He stated that his gun collection was worth $8000; his jewelry was worth $1000; and an ATV four wheeler was worth $2500. He stated that he had approximately $3000 in his checking account and $29,000 in a savings account, $15,000 of which came from a settlement following his involvement in a motor vehicle accident in 2004. Appellant earned $124,392.90 in 2001; $117,753.73 in 2002; $112,416 plus $21,336 in 2003 (he had two W-2 forms because Aerojet purchased Atlantic Research Corporation); and $139,431.46 in 2004 plus $1050 from teaching as an adjunct professor at SAU-Tech for one semester. He had contributed $90,000 to his 401K plan since his divorce from appellee, and it was currently valued at approximately $162,000. Appellant stated that after deductions his monthly income is $2536 and that his monthly expenses total $2070.76. Appellant stated that now that two of appellee's children are grown, appellee no longer has an excuse for not getting an education and that the parties' fourteen-year-old daughter could be left without supervision. Appellant also testified that there were online classes that appellee could take. He also pointed out that appellee has no health problems or disabilities.

In a modified decree entered on June 2, 2005, the Ouachita County Circuit Court reduced appellant's monthly alimony obligation to $950 and increased his weekly child-support obligation to $274. The trial court made the following findings:

> The evidence confirms that since the divorce of the parties, plaintiff and the minor child have moved to Cecil County, Maryland, and that plaintiff has remained with the same employer, ATK Elkton, LLC, and presently has an annual wage of approximately $32,000.00. At the time of the divorce, plaintiff was earning less than $20,000.00, and her future employment was in doubt. Plaintiff has purchased a comfortable home in Elkton, Maryland, and it would appear that her financial situation has improved considerably since the date of the divorce.
>
> The Court further finds that at the time of the divorce, plaintiff had custody of two minor children from a previous marriage who have both since become adults. As a result, there is no doubt but that the financial needs of the plaintiff have been significantly reduced.
>
> The Court further finds that defendant has continued to work for the same employer since the divorce and has experienced a considerable increase in wages, as has the plaintiff. The Court finds that the defendant continues to have the ability to pay alimony and his obligation should not be terminated.

A trial judge's decision whether to award alimony is a matter that lies within his or her sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002). The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; (4) the earning ability and capacity of both parties. *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). The amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *See Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998).

On appeal to this court, appellant specifically argues that:

The judge abused its discretion when ordering alimony to continue *indefinitely* at a lower, but quite substantial rate — despite overwhelming evidence that after James Valetutti paying almost a quarter million dollars in spousal plus child support in the seven years since their ten-year marriage ended, Ms. Valetutti no longer requires alimony, because her needs are substantially decreased, while her prosperity continues to steadily increase, due to: 1) having only one minor child, instead of three, now at home; 2) more education; 3) higher pay from better employment; 4) greater employment benefits; 5) fruits of her fourth marriage's <u>Divorce Decree</u>; 6) greater personal income; 7) better earnings potential; with, 8) considerably less debt; and 9) better credit.

Appellant further argues that it is no longer reasonable or equitable for appellee to receive spousal support that she does not need. He argues that circumstances have changed significantly since their 1998 divorce and the 1999 appeal. Appellant argues that "Ms. Valetutti, with help, has laudably eclipsed her previous circumstances to defy the Arkansas Court of Appeals' 1999 prediction that '. . . her opportunities for advancement in education and income were limited.' " He lists the following "fruits" of the parties' divorce decree that went to appellee: (1) over $51,000 from his 401K; (2) 50% of his pension, with 100% retention of her pension; (3) over $4000 in her relocation expenses paid by him; (4) all the marital home's furniture and half its equity; (5) his former $7000 gun collection that she sold; (6) over $2000 in income tax refunds plus $2500 from cashed bonds; (7) debt-free end to her fourth marriage with all credit-card debts going to him; (8) medical and dental insurance he provides for their daughter; and (9) $1500 per month alimony (over $108,000 at filing), plus $800 per month child support. Appellant also argues that his "reliable and lucrative" alimony payments may have deterred appellee's remarriage since she has not remained unmarried for very many consecutive years. Appellant maintains that "equity in this case cries for a cessation of alimony." He argues that "[a]limony under these circumstances is practically enslavement, a form of involuntary servitude the Court forces Mr. Valetutti to perform on behalf of his former spouse." Finally, appellant contends that the alimony in this case has become almost penal in nature.

While we sympathize somewhat with appellant's position, upon de novo review, we simply cannot hold that the trial court abused its discretion. The trial court's findings suggest that it

looked to both appellee's improved financial condition and appellant's ability to pay. The fact that appellee's financial situation had "improved considerably" and that her financial needs had been "significantly reduced" caused the trial court to reduce appellee's alimony by more than thirty percent. Although we find no cases where alimony has been ordered indefinitely for such a relatively short-term marriage, it is not prohibited. Presumably, it has been thought that the need for flexibility outweighs the corresponding need for relative certainty. *See Russell v. Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982); *Mitchell, supra.* Our supreme court has refused to set a bright-line limitation on alimony, and we will not either.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.

---

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## OCTOBER 4, 2006

TERRY CRABTREE, Judge, dissenting. I would grant the Petition for Rehearing, and then terminate alimony as requested by the appellant. It is conceded that the appellant continues to have the ability to pay alimony, but in my opinion, the appellee no longer has the need for the alimony. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988).

The parties to this appeal were married in 1988 and divorced in 1998, a ten-year marriage and the fourth marriage of the appellee. The appellant appealed from the divorce decree entered in this case asserting, among other things, that the trial court erred in awarding the appellee permanent alimony. The divorce decree provides "In addition to the $650.00 per month, Plaintiff is awarded $1500.00 per month permanent alimony. Alimony shall continue until the death of the payee, payor, the remarriage of the payee, other statutory limitations or further orders of this court." Obviously, the trial court considered the alimony awarded as being permanent, even though it may be modified at any time upon showing of changed circumstances and the equities of the parties. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). This court affirmed the trial court's award of alimony in the amount of $1500.00 per month.

On December 9, 2004, the appellant filed a petition to modify or terminate alimony. The trial court, finding changed circumstances, reduced appellant's alimony from $1500.00 per month to $950.00 per month, and increased his child support from $200.00 per month to $274.00 per month. The appellant appeals that decision to this court. This court affirmed the decision modifying alimony in *Valetutti v. Valetutti*, 95 Ark. App. 83, 234 S.W.3d 338 (2006). The appellant has filed a petition for rehearing which is before this court at this time. I would grant the petition.

The divorce decree awarded the appellee $200.00 per month child support; $1500.00 in alimony; all the furniture in her possession; one half the equity of a home in Maryland of which she was required to pay the first mortgage of $1,177.00, while the appellant was required to pay the second mortgage in the amount of $650.00 per month. The appellee was allowed to live in the house until it was sold. Further, the appellee was awarded one-half of the appellant's retirement account with Thiokol Corporation, approximately $51,000.00, and she received her entire retirement fund. She was awarded $2,500.00 representing one-half of a gift given to appellant's son. The appellee was awarded her costs in moving back to Maryland in the amount of $4,199.69, which had been paid out of the parties' tax refund. The balance of the tax refund was awarded to the appellee in the amount of $2,167.31. The appellant was required to pay the debt on the parties' credit cards, and any debt owed for medical expenses that remained outstanding. Further, the appellant was to pay all costs of transportation to visit with his daughter, pay for health insurance for the minor child of the parties, and pay for a life insurance policy for $150,000.00 on himself for appellee's benefit.

At the time of the divorce the appellee was earning less than $20,000.00 annually. At the time of the hearing on the petition to modify or terminate alimony, she was earning approximately $34,000.00 a year, and her two sons from a prior marriage no longer lived with her. The trial court stated, in its order resulting from the petition to modify or terminate, that the appellee "has purchased a comfortable home in Elkton, Maryland, and it would appear that her financial situation has improved considerably since the date of the divorce." The appellee managed to put at least $1,100.00 per year into a 401k account from the year following the divorce until the hearing.

In my opinion, the appellee's need for additional alimony has ended. After the divorce, the appellant moved back to Mary-

land basically debt free and with a substantial amount of money. She went to school and took accounting classes, and as a result, has obtained a higher salary. She could increase her salary again by going back to school for another two years. She certainly is not destitute, but enjoys a comfortable lifestyle. I would terminate the alimony now, or no later than 2010, which would give the appellee sufficient time to obtain the necessary education to increase her salary once again.

I would grant the petition for rehearing.

BIRD, J., agrees.