2009 Ark. App. 577

**James Kevin RUDDER, Appellant,**

v.

**Katharine Lillie HURST, Appellee.**

**No. CA 08–486.**

Court of Appeals of Arkansas.

Sept. 9, 2009.

Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., by Sam Hilburn, Traci La-Cerra, Shea Halbert, and Susan Coleman, Little Rock, for appellant.

J. Sky Tapp, Hot Springs, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant Kevin Rudder appeals the Garland County Circuit Court's divorce de-cree ending his marriage to appellee Katie Hurst. For reversal, appellant contends that the trial court erred by (1) retroactively modifying the temporary order; (2) issuing a standing restraining order; (3) requiring him to pay the children's counseling expenses; (4) not giving him credit for making payments on marital debt; (5) holding him responsible for the payment of marital debt and tax liability; (6) excluding certain testimony of his expert witness; (7) ordering him to maintain life insurance; (8) admitting into evidence the report of the attorney ad litem; and (9) directing him to pay temporary alimony and appellee's counseling expenses. We find no reversible error and affirm the decree in all respects.

The parties separated in May 2005 after ten years of marriage. Appellee gave birth to one daughter in 1998 and another in 1999. Appellant is a board-certified orthopedic surgeon, who practices in Hot Springs. Appellee is also a medical doctor, and she completed residencies in pediatrics and internal medicine but is board certified only in pediatrics. Initially, appellee opted to stay at home to raise the children, but in 2002, she began practicing internal medicine part-time.

After a temporary hearing held on September 6, 2005, the trial court awarded appellee temporary custody of the minor children along with child support. In the final decree, entered on January 2, 2008, the trial court granted appellee a divorce and custody of the children. The court accepted the parties' stipulation as to appellant's monthly income of $37,000 and set his child-support obligation at $6,756.92 per month. The court noted that the amount of current child support exceeded the child-support obligation contained in the temporary order and retroactively awarded appellee judgment for the difference, payable at an additional $1,357.38

per month. The trial court also ordered appellant to pay temporary alimony for three years at the rate of seven percent of his net income. To secure the payment of child support and alimony, the trial court directed appellant to maintain a $1,000,000 life insurance policy, designating the children as the beneficiaries of the policy. The trial court also accepted the recommendations contained in the attorney ad litem's report, which included the suggestion that appellee and the children continue to receive counseling at appellant's expense. In addition, the trial court equally divided the parties' marital property, including the proceeds from appellant's sale of his interests in two limited-liability companies during the pendency of the divorce. The court ordered appellant responsible for the 2006 tax liability and the balance on a credit card. Finally, the court ordered appellant to pay all but $20,000 of a consolidation loan with a balance of $86,684. The court placed the responsibility for $20,000 of this debt on appellee because this amount was used to retire her student loan. This appeal followed.

## Retroactive modification of temporary support order

Appellant first argues that the trial court erred by retroactively increasing the amount of child support set in the temporary order. To begin with, the record reflects that the trial court held a temporary hearing on September 6, 2005, but the time allotted for the hearing expired before the court could resolve all the issues. At the conclusion of the hearing, the trial court stated that it did not have sufficient information to make a reasoned determination as to the proper amount of child support. Nonetheless, the trial court awarded appellee temporary custody of the parties' children and ordered appellant to pay $2,544 on a biweekly basis in child support. The court, however, expressed its intention to resolve any difference between the amount set in the temporary order and the actual amount owed as determined at the final hearing. Neither party objected. Thereafter, the court scheduled the final divorce hearing to be held in October 2005. After several continuances, the final hearing took place over four days commencing on March 30, 2007, and concluding on October 31, 2007.

At the final hearing, the parties presented the trial court with a stipulation for appellant's child-support obligation at $6,756.92 per month. Appellee reminded the court of its intention to cure any deficiency between the temporary order of support and the amount awarded in the final decree. This time, and over appellant's objection, the trial court granted appellee judgment for the difference, payable at a monthly rate of $1,357.38. In its calculations, the trial court determined that the difference between the current agreed amount of monthly support ($6,756.92) and the temporary amount of monthly support ($5,088) yielded $1,668.92. The court then multiplied that amount by twenty-eight, the number of months separating the two orders, to arrive at a judgment of $46,729.76.

Appellant argues that the trial court erred by retroactively modifying the temporary support order. He contends that the trial court lacked the authority to do so based on Arkansas Code Annotated section 9–14–234 (Repl.2008), which provides in pertinent part:

> (b) Any decree, judgment, or order that contains a provision for the payment of money for the support and care of any child or children ... shall be final judgment as to any installment or payment of money that has accrued until the time either party moves through proper motion filed with the court and served on the other party to set aside,

alter, or modify the decree, judgment, or order.

A similar prohibition against retroactive modification is also found in Arkansas Code Annotated section 9–12–314(b) (Repl. 2008).

Appellant also relies on such cases as *Shipp v. Shipp*, 94 Ark.App. 351, 230 S.W.3d 305 (2006), and *Yell v. Yell*, 56 Ark.App. 176, 939 S.W.2d 860 (1997), to support his argument. However, both *Shipp* and *Yell* involve the modification of final divorce decrees, not temporary orders.

Our question here is whether section 9–14–234 prohibits the modification of a temporary support order. We review traditional equity cases on both factual and legal questions de novo on the record, but we will not reverse a finding by the circuit court unless it is clearly erroneous. *Allen v. Allen*, 99 Ark.App. 292, 259 S.W.3d 480 (2007). We do not defer to the circuit court's determinations of law. *Id.*

Considering established Arkansas law, we note that the purpose of a temporary order is not to finally dispose of the litigation but to serve the ends of justice until a final hearing can be held. *Harrison v. Terry Dairy Prods. Co.*, 225 Ark. 953, 287 S.W.2d 473 (1956). Also, the supreme court has held that the rules against vacating or modifying a final order have no application to interlocutory judgments or orders, and such orders may be vacated or modified at any time before the final judgment is entered. *Hardy v. Hardy*, 217 Ark. 296, 230 S.W.2d 6 (1950). We further observe that a final decree of divorce supercedes any temporary order of support. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999).

In the present case, the facts compel our conclusion. The temporary hearing was not fully completed, and the trial court specifically noted that it lacked enough information to determine the appropriate amount of child support. Due to time constraints, the court stated its intention to rectify any inequities that might result from setting temporary support without having all of the relevant information. We note that temporary hearings are typically brief and occur prior to the opportunity for adequate discovery. For this reason, parties are required by Administrative Order No. 10 to complete affidavits of financial means, and trial courts by necessity must rely on self-reporting to establish an amount of temporary support. Where, as here, a trial court reserves judgment until later determination, we perceive no error when the trial court makes any contemplated adjustments.[1]

As part of this point on appeal, appellant also asserts that the trial court erred in calculating the amount of the underpayment. While the trial court found the monthly amount of temporary support to be $5,088, the appellant claims that the correct amount is $5,512. The record reflects that the temporary order set support at $2,544 payable on a biweekly basis, and it is clear to us that the court merely doubled this amount to arrive at

1. Courts from other states with statutes similar to section 9–14–234 allow the retroactive modification of temporary support orders. For instance, in *Mallamo v. Mallamo*, 280 N.J.Super. 8, 654 A.2d 474 (N.J.App.Div. 1995), a New Jersey court concluded that its statute did not preclude a retroactive reduction in the amount of support because temporary support was often set without a plenary hearing and based on incomplete financial information. In *Sikes v. Sikes*, 330 N.C. 595, 411 S.E.2d 588 (1992), a North Carolina court held that its counterpart to our statute was not implicated by a temporary order because the interim order was not a final determination on the merits and was thus subject to retroactive modification.

the sum paid per month. Appellant suggests that the trial court should have multiplied the biweekly amount by twenty-six and divided that number by twelve to arrive at the monthly amount of support set in the temporary order. While appellant proposes an alternative to the trial court's calculations, he has not demonstrated that the method employed by the trial court was clearly erroneous.

### Standing restraining order

■ Second, appellant claims that the trial court erred by using a standing restraining order. The judges of the Garland County Circuit Court issued in July 2001 a standing restraining order applicable to all parties in divorce actions filed in their courts. The order seeks to regulate the conduct of parties in divorce proceedings both as to financial matters and as to how they interact with one another and their children. Appellant argues that a standing order violates the supreme court's prohibition against local rules as enunciated by the court's per curiam decisions of *In re Local Administrative Rules of the Chancery Court of the Eleventh District–West,* 299 Ark. 335, 772 S.W.2d 600 (1989), and *In re Changes to ₇the Arkansas Rules of Civil Procedure,* 294 Ark. 664, 742 S.W.2d 551 (1987). In the 1987 per curiam opinion, the supreme court abolished Rule 83 of the Arkansas Rules of Civil Procedure and its provision for local rules. In both decisions, the supreme court articulated its desire for uniformity in rules, but it did not prohibit administrative orders attending to housekeeping matters. Rather, the supreme court proscribed the promulgation of rules covering substantive issues and procedural matters that are duplicative of rules of civil procedure or existing statutes.

■ We need not decide in this instance whether the standing order violates the prohibition against local rules because appellant has not demonstrated any actual harm as a result of the entry of the standing order in his case. The mere existence of the standing order provides no basis for reversible error. As a general rule, appellate courts will not review issues that are moot. *Davis v. Brushy Island Pub. Water Auth.,* 375 Ark. 249, 290 S.W.3d 16 (2008). An issue is moot when any judgment rendered would have no practical legal effect on the outcome of the litigation. *See Cotten v. Fooks,* 346 Ark. 130, 55 S.W.3d 290 (2001). Because any decision on this matter would be purely advisory, we decline to issue one. *See Davis, supra.*

### Payment of counseling for children

■ Appellant next argues that the trial court erred by requiring him to pay the cost of counseling for the parties' children. He argues that this added expense amounts to an increase in his child-support obligation and that the trial court erred by not making the required ₈findings to justify an upward deviation from the amount of child support provided by the child-support chart.

■ In setting the amount of child support that a noncustodial parent must pay, reference to the most recent child-support chart is mandatory. *Lee v. Lee,* 95 Ark. App. 69, 233 S.W.3d 698 (2006). Section I of Administrative Order No. 10 requires a court to make specific written findings when deviating from the chart amount. Section V of the administrative order lists factors that a court may consider when setting support that is at variance with the amount mandated by the support chart. Among those factors is the provision or payment of necessary medical, dental, optical, psychological, or counseling expenses for the children.

We disagree with the premise of appellant's argument that requiring him to bear

the cost of counseling represents a deviation from the chart amount. Here, appellant stipulated to the amount of his income, and the court set child support based upon the chart. According to the administrative order, the payment of counseling is a factor for a court to consider when determining whether to deviate from the chart amount. However, this expenditure is not in and of itself a deviation from the chart amount. Because there was no deviation from the chart amount, the trial court was not required to make any written findings. Appellant's income is such that he can readily afford to bear this expense. The trial court's decision requiring him to pay for counseling is not clearly erroneous.

### Equal division of sale proceeds

■ Appellant further argues that the trial court erred by not giving him a credit for making payments on marital debt. During the marriage, appellant acquired an interest in two limited-liability[9] companies. While the divorce was pending, appellant liquidated his interests in the entities for $45,000 in one instance and $5,000 for the other. The trial court found that appellant's interests in the companies were marital property and awarded appellee one-half of the value of each.

Appellant does not contest the finding that his interests in these companies were marital property. He contends, however, that he used the sale proceeds to pay off marital debt and that the trial court should have given him special credit for those payments against appellee's marital interest in the companies. Appellant adds that he was forced to service most of the parties' debt during the pendency of the action due to appellee's filing of Chapter 7 bankruptcy.

■ Parties to a divorce case must often use marital funds to meet necessary expenses incurred during the pendency of the action, and a trial court has the discretion to determine when it is necessary to use these funds, whether the amount used was reasonable, whether fraud or overreaching occurred, and whether an offset is appropriate. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). The record reveals a complex array of marital assets for the trial court to equitably divide between the parties. In this case, the trial court exercised its discretion and determined that it was not inequitable to award appellee one-half of the money appellant received from the sale of his interests in the two companies. We find no abuse of discretion.

### Debt and tax liability

■ [10]Under this point on appeal, appellant asserts that the trial court erred by making him responsible for the majority of the marital debt. In the decree, the trial court ordered appellant to pay all but $20,000 of the parties' $86,684.18 consolidation loan. The court held appellee responsible for $20,000 of this debt because that amount was used to satisfy her student loan. The trial court also required appellant to pay a credit card debt of $39,000. On this issue, appellee testified that the card was not in her name and that she never used the card to make any purchases. The trial court required appellant to pay his own 2006 state and federal income taxes. Appellant testified that his 2006 taxes totaled $53,000, which he paid by borrowing money from his employer. Appellee filed a separate return for that year.

■ The allocation of marital debt must be considered in the context of the distribution of all of the parties' property. *Bailey v. Bailey*, 97 Ark.App. 96, 244 S.W.3d 712 (2006). However, we have held that Arkansas Code Annotated sec-

tion 9–12–315 (Repl.2008) and its presumption of equal division does not apply to the division of marital debts. *Williams v. Williams*, 82 Ark.App. 294, 108 S.W.3d 629 (2003); *Ellis v. Ellis*, 75 Ark.App. 173, 57 S.W.3d 220 (2001). A determination that debts should be allocated between the parties on the basis of the relative ability to pay is not a decision that is considered clearly erroneous. *Bailey, supra; Ellis, supra.* Moreover, the trial court is empowered with the authority to assign tax liability between divorcing parties and that decision must stand unless it is arbitrary and groundless. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001).

The evidence of record shows that appellant's ability to pay far exceeded that of appellee. We are thus unable to say that the trial court's allocation of marital debt was clearly erroneous or that its assignment of tax liability was arbitrary or groundless.

### Exclusion of expert witness's testimony

For the next point on appeal, appellant contends that the trial court erred by excluding certain testimony of his expert. Steven Schroeder, appellant's expert, who is not a certified public accountant, was qualified as an expert in business valuation. However, the trial court declined to allow Schroeder to testify as to appellant's 2007 income because the subject was outside Schroeder's field of expertise. This issue is not preserved for review because appellant failed to proffer Schroeder's proposed testimony. An appellant must proffer the excluded evidence so that we can review the trial court's decision, unless the substance of the evidence is apparent from the context. *Wade v. Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995). The substance of the excluded testimony is not readily apparent, and we are precluded from addressing this point.

### Life insurance

The next point on appeal is appellant's contention that the trial court erred by ordering him to maintain life insurance of at least $1,000,000 to secure his child-support and alimony obligations. Appellant argues that there are only two circumstances in which a trial court can order a divorcing spouse to maintain life insurance for the benefit of the other spouse: where the insurance would compensate the other spouse for property retained by the spouse ordered to maintain the insurance, see *Raney v. Raney*, 262 Ark. 747, 561 S.W.2d 287 (1978), and where the parties agree to the maintenance of the policy as part of a settlement agreement, see *Dodson v. Dodson*, 37 Ark.App. 86, 825 S.W.2d 608 (1992). Because neither of those circumstances are present, appellant asserts that the trial court did not have the authority to make such an order.

In *Raney, supra*, our supreme court approved the trial court's directive that the husband maintain a life insurance policy in lieu of giving the wife an interest in marital property. In support of that holding, the court noted that it had frequently reviewed decrees providing for the continuance or assignment of life insurance policies in favor of the divorced wife or children. The court also acknowledged decisions from other jurisdictions that recognized a trial court's authority to require the maintenance of life insurance for the benefit of a spouse. In addition, we note that Arkansas Code Annotated section 9–12–312(c)(1) (Repl.2008) provides:

When the order provides for payment of money for the support and care of any children, the court, in its discretion, may require the person ordered to make the payments to furnish and file with the clerk of the court a bond or post securi-

ty *or give some other guarantee* in such amount and with such sureties as the court shall direct.

(Emphasis supplied.) Because the supreme court has indicated its approval of an order requiring the maintenance of a life insurance policy under these circumstances, and based on section 9–12–312(c)(1), we hold that the trial court had the authority to order appellant to maintain a life insurance policy.[2]

### *Admission of ad litem's report*

In his eighth assignment of error, appellant argues that the trial court erred by admitting into evidence the report of Michelle Strause, the attorney ad litem. Appellant objected to the introduction of the ad litem's report on the singular ground that the ad litem went beyond the scope of her charge. The court overruled the objection and admitted the report.

On appeal, appellant does not argue that the ad litem exceeded the scope of her duties. Instead, appellant argues that the ad litem's report is hearsay and that it violated Administrative Order No. 15 because the ad litem did not appear at the hearing and examine witnesses. It is clear to us that appellant did not raise these additional arguments with the trial court. It is well established that we will not consider an argument raised for the first time on appeal, and a party cannot change the grounds for an objection on appeal but is bound by the scope and nature of the arguments made at trial. *See Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000). Accordingly, we affirm the trial court's ruling on this evidentiary matter.

### *Alimony and appellee's counseling expenses*

As his final point on appeal, appellant argues that the trial court erred by ordering him to pay spousal support for three years, as well as appellee's counseling expenses. Appellant argues that appellee is a physician who is capable of full-time employment. Appellant also stresses that appellee has few debts after filing for bankruptcy. Accordingly, appellant argues that appellee has no need for alimony and that she has the ability to pay for her own counseling.

The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). The primary factors that a court should consider in awarding alimony are the financial need of one spouse and the other spouse's ability to pay. *See id.* The trial court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. *Johnson v. Cotton–Johnson*, 88 Ark.App. 67, 194 S.W.3d 806 (2004). We adhere to no mathematical formula or bright-line rule in awarding alimony. *Valetutti v. Valetutti*, 95 Ark.App. 83, 234 S.W.3d 338 (2006). The trial court may make an award of alimony that is reasonable under the circumstances. *Kuchmas, supra.* The decision whether to award alimony lies within the sound discretion of the trial court, and we will not reverse absent an abuse of that

---

**2.** Courts from other jurisdictions have held that a trial court has the authority, either inherent or by statute, to require a spouse to maintain life insurance while his or her obligation to pay child support continues. *See In re Marriage of Dulyn*, 89 Ill.App.3d 304, 44 Ill.Dec. 622, 411 N.E.2d 988 (1980); *Graham v. Graham*, 595 S.W.2d 720 (Ky.App.1980); *Bailey v. Bailey*, 86 Nev. 483, 471 P.2d 220 (1970); *Young v. Young*, 971 S.W.2d 386 (Tenn.App.1997).

discretion. *Cole v. Cole,* 82 Ark.App. 47, 110 S.W.3d 310 (2003).

The facts in this case are similar to those in *Cotton–Johnson, supra.* There, the parties were both physicians, and the husband argued that it was error to award his wife permanent alimony because she had the potential to earn gross wages of $157,000 per year. The wife worked two days per week and testified that she would not accept full-time employment because it was important to her to stay at home with the children. The testimony also disclosed that the wife subordinated her career to the husband, whose gross earnings approximated a million dollars per year. We affirmed the award of permanent alimony, noting that the wife's desire to work part-time so that she could raise the children was a proper concern. We further noted that, even if the wife were to earn $157,000 per year, the husband's income would far exceed the wife's income.

Here, the record reveals that the trial court fairly considered the appropriate factors, including the respective needs and the ability of each party to earn income, and ordered appellant to pay alimony for three years. The circumstances of this case reveal that appellant pursued and advanced his career, while appellee first stayed at home and later worked part-time in order to care for the children. At present, appellant's income substantially exceeds that of appellee, who is seeking time to achieve board certification in internal medicine. All things considered, we find no abuse of discretion in the trial court's award of temporary alimony. Given appellant's superior ability to pay, we also hold that the trial court did not abuse its discretion by ordering appellant to pay the cost of appellee's counseling.

Affirmed.

KINARD and BAKER, JJ., agree.