2010 Ark. App. 137
**Arnold GILLIAM, Appellant**

v.

**Jamie GILLIAM, Appellee.**

**No. CA 08–809.**

Court of Appeals of Arkansas.

Feb. 11, 2010.

Harry Truman Moore, Goodwin Moore, LLP, Paragould, for Appellant.

Tommy Joe Holifield, Paragould, Rieves, Rubens & Mayton, West Memphis, for Appellee.

DAVID M. GLOVER, Judge.

In this divorce case, both parties appeal from certain aspects of the Craighead County Circuit Court's decree. Appellant Arnold Gilliam raises five points for reversal concerning the division of marital property and debt and the award of alimony and attorney's fees to appellee Jamie Gilliam. Appellee raises one point on cross-appeal concerning the calculation of appellant's income for child support and alimony purposes. We affirm on direct appeal and on cross-appeal.

The parties married in 1986 while appellant was attending medical school. Two children were born during the marriage, a daughter who had reached majority by the time of trial and a son who was fifteen. The son suffers from dyslexia. After the birth of the parties' daughter, appellee did not work outside the home. The parties separated in 2005. Appellee filed her complaint for divorce on September 22, 2005. Appellant filed an answer and counterclaim.

A temporary order was entered on December 14, 2005. That order awarded temporary custody of the children to appellee, and appellant was ordered to pay child support of $3,200 per month. Appellant was also ordered to pay spousal support of $1,500 per month, the debt on the parties' vehicles, and the mortgage debt on the parties' marital residence. Appellee was awarded temporary possession of the marital residence. The court deferred the issue of attorney's fees and suit money until the final hearing.

Trial was held in the case on October 2 and 10, 2007. After hearing the testimony of witnesses, viewing the documentary evidence, and receiving briefs from the parties, the circuit court issued a letter opinion on November 30, 2007. Appellant was awarded a divorce on his counterclaim on the basis of eighteen months' separation. Appellee was awarded custody of the parties' son. After commenting that calculating appellant's income was difficult because appellant was not self-employed, the court found appellant's income to be $15,895 per month. The court stated that the presumed amount of child support was $2,384 per month. However, the court set appellant's support obligation at $2,400 per month. Based on the disparity in the par-

ties' incomes and the fact that appellee had not worked outside the home, appellant was ordered to pay all of the minor child's medical and dental expenses until the later of when the child graduated from high school or reached his majority.

The court found that the parties' marital residence was surrounded by forty-two acres. The property was appraised as being worth $330,000 the week before trial and was encumbered by three mortgages totaling $296,260. The court awarded appellee exclusive possession of the residence until the later of the minor child reaching majority or graduating from high school. At that time, the property would be sold with the proceeds divided equally between the parties. Appellant was ordered to continue making the three monthly mortgage payments on the property, and was to be reimbursed out of the sales proceeds for the payments on the second and third mortgages.

The court awarded appellee one-half the value of appellant's interest in the medical practice. The court noted that the parties presented conflicting evidence as to the value of this interest. Appellee's net valuation was $100,131, while appellant's net valuation was $88,162. The court found that appellant had various retirement accounts totaling $394,458 that were marital property. Appellee was awarded one-half of this amount.

Appellant was awarded his vehicle and was to be responsible for the debt on that vehicle, as well as the debt on the vehicle purchased for the parties' daughter. Appellee was awarded a 2007 Toyota Corolla, a 2000 Ford F350 pick-up, two horse trailers, a tractor, and a riding lawn mower. She was to be responsible for the debts on these items. The court noted that there was little information as to the value of these vehicles. However, based on the facts, circumstances, and situation of the parties, the court found this to be an equitable distribution.

The court found that two horses were the separate property of appellee, other horses were the separate property of the children, and that appellant had sold one of the horses to raise money for the purchase of a vehicle for the parties' daughter. Appellee was awarded approximately $1,700 as her share of the proceeds from that sale.

The parties were found to have made a division in kind of the horses and certain weapons and hunting equipment. The court found that it was equitable to divide these items pursuant to the agreement. The court also noted that there was very little evidence as to the value of these items. Certain items of personal property, primarily furniture and household items, were then awarded to the parties and to the children.

Appellee was found to be a dependent spouse who had not worked outside of the home during the marriage. The court considered the division of property and other factors before concluding that appellee should be awarded alimony of $2,700 per month. Appellant was ordered to pay all marital debts unless otherwise assigned. Finally, the court awarded appellee an attorney's fee of $12,000.

The court later modified its letter opinion to provide that appellant would be entitled to be reimbursed for all of his payments on the debt on the marital-residence property from the date of divorce until the date of sale. The court also recalculated appellant's income to be $14,129 per month. Based on this new income calculation, appellant's new child-support obligation was $2,065 per month, and alimony was $2,400 per month. The court's written decree was entered on March 14, 2008.

Appellant filed a motion for a new trial on March 27, 2008, contending that the court's findings regarding the division of property and marital debt were against the preponderance of the evidence, and that the decisions to award appellee alimony and her attorney's fees were abuses of the court's discretion.

Appellant filed his notice of appeal from the decree on April 14, 2008. Appellee filed her notice of cross-appeal on April 28, 2008. The circuit court denied appellant's motion for new trial by order entered on April 28, 2008. Appellant amended his notice of appeal to include the denial of his motion for new trial on May 27, 2008.

For his first point, appellant argues that the circuit court erred in awarding alimony to appellee. Appellant contends that the circuit court should have awarded appellee rehabilitative alimony for a short period of time to enable her to re-enter the workforce instead of permanent alimony. Appellant also argues that the amount of the award was excessive.

 The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). The primary factors that a court should consider in awarding alimony are the financial need of one spouse and the other spouse's ability to pay. *See id.* The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. *Johnson v. Cotton–Johnson,* 88 Ark.App. 67, 194 S.W.3d 806 (2004). We adhere to no mathematical formula or bright-line rule in awarding alimony. *Valetutti v. Valetutti,* 95 Ark.App. 83, 234 S.W.3d 338 (2006). The circuit court may make an award of alimony that is reasonable under

the circumstances. *Kuchmas, supra.* The decision whether to award alimony lies within the sound discretion of the circuit court, and we will not reverse absent an abuse of that discretion. *Cole v. Cole,* 89 Ark.App. 134, 201 S.W.3d 21 (2005).

 The circuit court in this case considered the financial circumstances of both parties as well as appellant's greater earning power, the fact that appellee wanted to go to nursing school to become a registered nurse, and the property division. The court also made the award modifiable upon a change in circumstances. Given these factors as well as appellee's age (forty-three at the time of trial); the length of the marriage (twenty-one years); appellee's testimony that appellant insisted that she stay home and raise the children; the lifestyle that the parties enjoyed; and appellee's absence from the full-time job market for nearly twenty years, we cannot say that the circuit court abused its discretion in the award of alimony.

We discuss appellant's second, fourth, and fifth points together because they all relate to the division of the marital estate and marital debt. In his second point, appellant argues that the circuit court divided the marital property and debt in an unequal fashion in favor of appellee. Appellant's fourth point is that he should not be required to wait until the parties' son reaches his majority before the marital residence is sold and the proceeds divided equally. In his fifth point, appellant argues that the circuit court erred in refusing to give him credit for the payments he made on the marital debts during the course of the divorce proceedings. The central theme of appellant's arguments under these points is that the circuit court made an unequal division of the marital property by ordering appellant to pay most of the marital debt, including the mortgage payments on the marital resi-

dence, and by waiting until the parties' son reaches majority or graduates from high school before ordering the marital residence sold and the proceeds equally divided.

We review division-of-marital-property cases de novo; however, we will affirm the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Id.*

Under Arkansas Code Annotated section 9–12–315, all marital property shall be divided equally between the parties unless the circuit court finds such a distribution would be inequitable. *See* Ark.Code Ann. § 9–12–315(a)(1)(A) (Repl. 2008). Section 9–12–315, however, does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Williams v. Williams*, 82 Ark.App. 294, 108 S.W.3d 629 (2003). In the present case, the circuit court did not state that it was making an unequal division of the marital property, but merely listed how the property should be equitably divided. Appellant attempts to demonstrate how the record supports his contention that an unequal division was made by listing the marital residence and retirement accounts that were undeniably divided equally, together with the horse trailer and camper appellee received without listing the weapons that he received as part of the property division. As the circuit court noted, there was scant evidence in the record as to the value of the personal property. Of course, the burden is upon the appellant to bring up a record sufficient to demonstrate that there was error below. *McLeroy v. Waller*, 21 Ark.App. 292, 731 S.W.2d 789 (1987). As we consider the evidence that is in the record, however, the circuit court could have found it was making an equal division of the property. The circuit court is not required in every case to mechanically divide the marital property in kind. *Hackett v. Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982). We will not substitute our judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong. *See Page v. Anderson*, 85 Ark.App. 538, 157 S.W.3d 575 (2004). It is not.

Even if we could say that the circuit court made an unequal division of the marital property, that is still a result authorized by section 9–12–315. While section 9–12–315 requires the circuit court to consider certain factors and to state the basis for an unequal division of marital property, it does not require the court to list each factor in its order or to weigh all factors equally. *See Page, supra.* Here, the circuit court complied with the statute when it stated the factors it considered in concluding that the division of the parties' personal property was equitable.

The allocation of marital debt must be considered in the context of the distribution of all of the parties' property. *Bailey v. Bailey*, 97 Ark.App. 96, 244 S.W.3d 712 (2006). However, we have held that Arkansas Code Annotated section 9–12–315 and its presumption of equal division does not apply to the division of marital debts. *Rudder v. Hurst*, 2009 Ark.

App. 577, 337 S.W.3d 565; *Williams, supra*; *Ellis v. Ellis*, 75 Ark.App. 173, 57 S.W.3d 220 (2001). There is no requirement that the marital debt must be subtracted from the marital assets to determine the "net" value of the total award made to each party in all divorce cases. *Williams, supra*. A determination that debts should be allocated between the parties on the basis of the relative ability to pay is not a decision that is considered clearly erroneous. *Rudder, supra*. The evidence of record shows that appellant's ability to pay far exceeded that of appellee. We are thus unable to say that the circuit court's allocation of marital debt was clearly erroneous.

■ Finally, the circuit court has wide discretion in awarding either party the possession of the home, and the award of possession of the home is subject to such terms as the court deems to be equitable and just. *Schumacher v. Schumacher*, 66 Ark.App. 9, 986 S.W.2d 883 (1999); *Hodges v. Hodges*, 27 Ark.App. 250, 770 S.W.2d 164 (1989). Appellant's argument is that the effect of this decision is to either increase his child-support obligation or his alimony obligation to more than one-third of his net monthly income. However, this ignores the fact that the court provided that appellant will recover all of his payments made on the mortgage debt between the entry of the decree and the date of the sale. Appellant will not only recover the payments he makes in the interim, he will also share in any increase in the equity of the property.

■ Appellant's third point on appeal is that the circuit court's decision to award appellee $12,000 in attorney's fees was excessive. He argues that appellee failed to properly document her request. He also argues that appellee spent time pursuing the divorce on fault-based grounds when the court ultimately awarded the divorce to appellant upon eighteen months' separation. The circuit court has the inherent power to award attorney's fees in domestic-relations proceedings, and whether the circuit court should award fees and the amount thereof are matters within the discretion of the circuit court. *See Miller v. Miller*, 70 Ark.App. 64, 14 S.W.3d 903 (2000). In making this determination, the circuit court must consider the relative financial positions of the parties. *Jablonski v. Jablonski*, 71 Ark.App. 33, 25 S.W.3d 433 (2000).

■ The circuit court is in a better position than this court to evaluate the services of counsel. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). During the hearing on the motion for a new trial, appellant noted that there was no proof before the court as to the amount of the fees sought. Appellee's affidavit of financial means presented at trial listed the amount owed appellee's attorney at approximately $11,000. Her attorney stated in response to a question by the court at the hearing on the motion for a new trial that the amount requested was $20,000. The circuit court may use its own experience as a guide and can consider the types of factors set forth in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990); but, it need not conduct an exhaustive hearing on the amount of attorney's fees because it has presided over the proceedings and gained familiarity with the case and the services rendered by the attorney. *See Paulson v. Paulson*, 8 Ark.App. 306, 652 S.W.2d 46 (1983). Further, this court has not strictly required documentation of time and expense in a divorce case where the circuit court has the opportunity to observe the parties, their level of cooperation, and their obedience to court orders. *See Deaton v. Deaton*, 11 Ark.App. 165, 668 S.W.2d 49 (1984).

■ We do not believe that the circuit court abused its discretion in deter-

mining the amount of the attorney's fee. The court noted the disparity in income between the parties in deciding to award appellee alimony. Disparity in incomes is a relevant factor for the circuit court to consider, but standing alone it will not justify an award of attorney's fees. *Davis v. Williamson,* 359 Ark. 33, 194 S.W.3d 197 (2004). The court also considered other proper factors including the experience and ability of the attorney, the time spent at trial and during post-trial motions, and the results obtained. *See Chrisco, supra.* The circuit court also noted that appellant was not fully cooperative during discovery concerning his income and assets. *See Deaton, supra.* Presumably, the court considered appellee's attempt to obtain the divorce on fault grounds when it reduced the requested fee from $20,000 to $12,000.

As her sole point on cross-appeal, appellee asserts that the circuit court erred in calculating appellant's income for child-support purposes. She contends that appellant's income is $20,913 per month, instead of the $14,129 found by the circuit court.

█ |12We must first determine whether we have jurisdiction to hear appellee's cross-appeal. Appellant filed a motion to dismiss appellee's cross-appeal in which he argues that the notice of cross-appeal was untimely. Although we denied the motion on July 29, 2009, appellant raises the issue again in his brief in response to appellee's argument on cross-appeal. We have jurisdiction over the cross-appeal.

Arkansas Rule of Appellate Procedure–Civil 4(a) provides that, except as otherwise provided in subsequent sections of this rule, a notice of appeal shall be filed within thirty days from the entry of the judgment, decree, or order appealed from. The rule also provides that a notice of cross-appeal shall be filed within ten days of receipt of the notice of appeal. Arkan-

sas Rule of Appellate Procedure–Civil 4(b)(1) provides that, upon the timely filing in the circuit court of a motion for new trial under Ark. R. Civ. P. 59(b), the time for filing the notice of appeal shall be extended for all parties and that the notice of appeal shall be filed within thirty days from the entry of the order disposing of the last motion or the deemed denial of the motion. Arkansas Rule of Appellate Procedure–Civil 4(b)(2) provides that a notice of appeal filed prior to the disposition of a motion for new trial, or another of the motions listed in Rule 4(b)(1), shall be treated as filed on the day after the entry of an order disposing of the motion.

In the present case, the circuit court entered its divorce decree on March 14, 2008. Appellant filed his motion for new trial on March 27, 2008. He then filed his notice of appeal from the decree on April 14, 2008. The circuit court denied appellant's motion for new trial |13on April 28, 2008. Under Rule 4(b)(2), the April 14 notice of appeal was treated as filed on April 29, 2008, the day after the circuit court entered its order denying the motion for new trial. Appellee's notice of cross-appeal was filed on April 28, 2008, shortly after the entry of the order denying the motion for new trial, and cannot be untimely.

█ We now turn to the merits of the argument. This argument affects both the award of child support and the award of alimony. Our standard of review for an appeal from a child-support order is de novo on the record. *Parker v. Parker,* 97 Ark.App. 298, 248 S.W.3d 523 (2007). As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* It is the ultimate task of the circuit court to determine the expendable income of a child-support payor. *Id.* This income may be different from income for tax purposes. *Cole, supra.*

The circuit court ultimately found appellant's monthly income to be $14,129. Based on this figure, the court fixed appellant's child support at $2,065 per month. Appellee argues that the circuit court erred in calculating appellant's income because appellant is able, according to appellee, to hide income under the guise of "overhead" prior to the calculation of his income. She points to testimony that appellant was participating in a voluntary, deferred-compensation program. Appellant was contributing approximately $26,000 to this program. If he had not participated, this money would have been paid to appellant. In calculating appellant's income, the circuit court, at appellee's request, added $2,500 of deferred compensation back into appellant's year-to-date income. This, therefore, seems to be a case in which the circuit court did what it was asked to do. An appellant (here, appellee) may not complain on appeal that the circuit court erred if she induced, consented to, or acquiesced in the circuit court's position. *Parker, supra.*

Appellee also argues that the circuit court should have averaged the income shown in appellant's recent tax returns. The child-support guidelines suggest that income should be averaged only for self-employed persons and the circuit court found that appellant was not self-employed as that term is used in the guidelines. Appellee has not demonstrated that the method employed by the circuit court was clearly erroneous. It is her burden to demonstrate reversible error. *Parker, supra.*

Affirmed on direct appeal; affirmed on cross-appeal.

GRUBER and BROWN, JJ., agree.